UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

          -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com

*Attorneys for Creditor Rabo AgriFinance LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC.,<br><br>    Debtor. | **CASE NO. 23-20084-7-rlj**<br><br>**Chapter 7** |
| IN RE:<br><br>McCLAIN FARMS, INC.,<br><br>    *Debtor.* | **CASE NO. 23-20085-7-rlj**<br><br>**Chapter 7** |

| IN RE: | |
|---|---|
| 7M CATTLE FEEDERS, INC., | **CASE NO. 23-20086-7-rlj** |
| *Debtor.* | **Chapter 7** |

## RABO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

---

### NOTICE OF HEARING

PLEASE SEE THE "NOTICE – RESPONSE DEADLINE" SET FORTH BELOW, REGARDING THE DEADLINE FOR FILING A RESPONSE TO THIS MOTION AND THE DATE OF A FINAL HEARING IF A TIMELY RESPONSE IS FILED.  IF A TIMELY RESPONSE IS FILED, THE COURT WILL CONDUCT A HEARING VIA DOCKET CALL ON JUNE 21, 2023, AT THE HOUR OF 1:30 P.M.

PLEASE FURTHER NOTE THAT THE MOVANT MAY REQUEST A PRELIMINARY HEARING OR EMERGENCY HEARING PRIOR TO THE RESPONSE DEADLINE OR FINAL HEARING DATE, WHICH MAY BE THE SUBJECT OF A SEPARATE NOTICE.

---

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Rabo AgriFinance LLC ("**Rabo**"), a secured creditor of each of McClain Feed Yard, Inc. ("**MFY**"), McClain Farms, Inc. ("**MFI**") and 7M Cattle Feeders, Inc. ("**7M**") (collectively, the "**McClain Debtors**"), each of which is a Chapter 7 debtor in the above-entitled cases, through counsel, hereby respectfully moves this Court pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), Federal Rule of Bankruptcy Procedure 4001, and Local Bankruptcy Rule 4001-1, for entry of an order terminating the automatic stay, in whole or in part, and authorizing Rabo to exercise its

rights and remedies with respect to the following real property collateral ("**Real Property**") and

personal property collateral ("**Personal Property**") securing the loans owed to it by the Debtors:

A.    Real Property.

1.    The real property, improvements, fixtures, water rights and other property

described in that certain *Deed of Trust, Assignment of Rents and Security Agreement (Deaf Smith*

*and Parmer Counties, Texas*), dated August 27, 2021, executed by MFY and 7M, as Grantor, in

favor of Rabo, as Beneficiary, a true and correct copy of which is attached as Exhibit "A";

2.    The real property, improvements, fixtures, water rights and other property

described in that certain *Deed of Trust, Assignment of Rents and Security Agreement (Deaf Smith*

*and Parmer Counties, Texas)*, dated March 16, 2021, executed by MFY and 7M, as Grantor, in

favor of Rabo as Beneficiary, a true and correct copy of which is attached as Exhibit "B";

3.     The real property, improvements, fixtures, water rights and other property

described in that certain *Deed of Trust, Assignment of Rents and Security Agreement (Deaf Smith*

*and Parmer Counties, Texas)*, dated January 8, 2020, executed by MFY and 7M, as Grantor, in

favor of Rabo as Beneficiary, a true and correct copy of which is attached as Exhibit "C"; and

4.    The real property, improvements, fixtures, water rights and other property

described in that certain *Deed of Trust, Assignment of Rents and Security Agreement (Deaf Smith*

*and Parmer Counties, Texas)*, dated July 24, 2019, executed by MFY and 7M, as Grantor, in

favor of Rabo as Beneficiary, a true and correct copy of which is attached as Exhibit "D."

B.    Personal Property.

All equipment and fixtures (excluding only titled equipment or fixtures or any computers, laptops, phones, thumb drives or any other equipment that would contain the Debtors' records) owned by any of the McClain Debtors, including but not limited to the following equipment and any other miscellaneous tools, personal property or equipment:

1.      All non-titled equipment or fixtures in the possession of Blue Grass Stockyards, including but not limited to the equipment and fixtures described on Exhibit "E" hereto and any other equipment or fixtures that consists of "shop equipment that is stored in Mt. Sterling";

2.      All non-titled equipment or fixtures in the possession of 5 Star Auctioneers in Plainview, Texas (www.5starauctioneers.com), including 3 Wheel Loaders, 4 Feed Trucks, 3 Tractors, a Lee Spider Sprayer, 20 pieces of farm equipment, a Kubota Track Skid Steer, 2 Kawasaki Mules and a Kubota RTV (see attached Exhibit "F"); and

3.      To the extent not already included in the above, any non-titled equipment or fixtures on the following lists (photos attached as Exhibit "G"):

McClain Feed Yard – Hereford, TX

- Komatsu WA200 Wheel Loader
- 2010 GMC Half-Ton Pickup Truck
- 2008 Peterbilt Feed Truck
- 24x6 Gooseneck Stock Trailer
- Caterpillar 259D Compact Track Loader
- Kawasaki Mule 600 Side X Side

7M Cattle Feeders – Friona, TX

- Wheel Loaders (2)
- Komatsu WA320 Wheel Loader
- Komatsu WA200 Wheel Loader

- Feed Mixer Trucks (3)
  - Roto-Mix Model 720-16 Commercial Series Horizontal Rotary Feed Mixer
  - Roto-Mix Model 620-16XD Commercial Series Horizontal Rotary Feed Mixer
  - Roto-Mix Model 620-16 Commercial Series Horizontal Rotary Feed Mixer
- Kubota RTV X900 Full-Sized Diesel Utility Vehicle
- Takeuchi TL8 Skid Steer
- John Deere Big Farm 7330 Tractor
- Garfield Drag Scraper / Landleveler
- Bush Hog
- Extra Loader Bucket

In support hereof, Rabo shows the Court the following:

## **STATEMENT OF FACTS**[1]

1.      Each of the McClain Debtors filed voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code with the United States Bankruptcy Court for the Northern District of Texas (the "**Court**") on April 28, 2023 (the "**Petition Date**").

2.      Brian McClain ("**McClain**") was the sole owner of each of the McClain Debtors.   McClain passed away on April 18, 2023.

3.      Rabo and the McClain Debtors are parties to certain loan and security documents evidencing loans made by Rabo to the McClain Debtors.  Rabo agreed to make credit facilities available to the McClain Debtors in connection with their livestock, cattle feeder, and cattle production businesses in Texas and Kentucky, in return for payment by the McClain Debtors under certain terms and conditions.

---

[1] The Loan Documents referred to herein can be produced upon request.  They are not attached hereto because they are voluminous.

4.      The credit facilities between Rabo and the McClain Debtors are evidenced by, among other loan and security documents, that certain (a) *Master Credit Agreement* dated May 11, 2018, by and between MFY and Rabo, (b) that certain *Joinder*, dated July 15, 2019, by and between 7M, MFY, and Rabo, (c) that certain *Joinder*, dated August 27, 2021, by and between McClain, MFY, 7M and Rabo, (d) that certain *Addendum to Master Credit Agreement*, dated July 24, 2019, by and between MFY, 7M and Rabo, (e) that certain *Addendum to Master Credit Agreement*, dated January 13, 2023, by and between MFI, MFY, 7M, McClain and Rabo. The Master Credit Agreement, Joinders, and Addendum to Master Credit Agreement(s) are collectively referred to herein as the "**MCA**").

5.      Along with the execution of the MCA, the McClain Debtors executed and delivered to Rabo (a) that certain *Real Estate Term Loan 1 Note*, dated May 11, 2018, in the principal amount of $332,500.00, executed by MFY in favor of Rabo, (b) that certain *Real Estate Term Loan 2 Note*, dated July 24, 2019, in the principal amount of $625,000.00, executed by 7M in favor of Rabo, (c) that certain *Real Estate Term Loan 3 Note*, dated August 27, 2021, in the principal amount of $1,019,800.00 executed by McClain in favor of Rabo, (d) that certain *Operating Line of Credit 3 Note*, dated January 13, 2023, in the principal amount of $54,000,000.00, executed by MFY, MFI and 7M in favor of Rabo. Each Note was accompanied by those certain *Facility Sheets*, of various dates, by and between the McClain Debtors, McClain and/or Crystal D. McClain ("**C. McClain**") in favor of Rabo. The Real Estate Term Loan Note 1, Real Estate Term Loan Note 2, Real Estate Term Loan Note 3, Operating Line of Credit 3 Note, andaccompanying Facility Sheets are

collectively referred to herein as the "**Notes**."

6.     To secure repayment of the indebtedness and obligations evidenced under and by the MCA, Notes and Facility Sheets, the McClain Debtors, each as a Grantor, in favor of Rabo, executed that certain (a) *Master Security Agreement*, dated August 27, 2021, and (b) that certain *Master Security Agreement*, dated July 24, 2019. True and correct copies of the Master Security Agreement(s) (collectively, the "**MSA**") are attached hereto as Exhibit "H."

7.     Under and pursuant to the MSA, the McClain Debtors, each as a Grantor, pledged essentially all of their personal property assets now owned or hereafter acquired, defined as the "**Collateral**" (Exhibit C, MSA, ¶ 1, *The Collateral*), including but not limited to: all accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments, deposit accounts, inventory, equipment, fixtures, farm products (including crops grown, growing or to be grown and livestock, born or unborn, supplies used in farming operations,and products of crops and livestock), general intangibles, including all Intellectual Property, all proceeds of crop insurance, price support payments, government program payments, rights and interests under Hedging Agreements, and all accessions, attachments, additions to, substitutes or replacements for any Collateral, and all proceeds, products, rents and profits of any Collateral, allrights under warranties and insurance contracts covering the Collateral, and any causes of action relating to the Collateral, and all Books and Records pertaining to any Collateral, including but notlimited to any computer-readable memory and any computer hardware or software necessary to process such memory (the "**Personal Property Collateral**") in both Texas and Kentucky to secure the Loan

Obligations, as defined below, due and owing to Rabo under the Loan Documents.

8.      Rabo perfected its first priority security interest in the Personal Property Collateral by filing UCC-1 Financing Statements ("**UCC-1's**) in Office of the Secretary of State of Kentucky and Office of the Secretary of State of Texas. True and correct copies of the UCC-1's of record with the Kentucky Secretary of State's Office and Texas Secretary of State's Office are attached hereto and incorporated herein as Exhibit "I".

9.      In connection with the MCA and MSA, and to further secure the repayment of the indebtedness and obligations due and owing to Rabo, 7M and MFY each granted liens on certain real property, improvements, fixtures, water rights and other property described in those certain *Deeds of Trust, Assignments of Rents and Security Agreements (Deaf Smith and Parmer Counties, Texas)*, of various dates, copies of which are attached hereto and incorporated herein as Exhibits "A" through "D" (collectively, the "**Trust Deeds**").

10.     To further secure the repayment of the indebtedness and obligations due and owing to Rabo under the MCA and Notes and to induce Rabo into making the Loans to the McClain Debtors, McClain, C. McClain, MFI, MFY and 7M each executed and delivered certain *Master Loan Guaranty Agreements*, of various dates, in favor of Rabo (collectively, the "**MLGs**" or "**Master Loan Guarantees**").

11.     The MCA, Facility Sheets, Notes, MSA, UCC-1's, Trust Deeds and MLGs, and all other documents evidencing or securing payment of the indebtedness or obligations due and owing to Rabo by the McClain Debtors, or any of them, as each may be amended, modified, and/or assigned, are collectively referred to as the "**Loan Documents**" and all of the loans

evidenced by the Loan Documents hereinafter referred to as the "**Loans**").

12.    Rabo has been and is at the time of the filing of this Motion the owner and

holder of the Loan Documents and the entity to whom the McClain Debtors are obligated

under the Loan Documents.  Rabo also is the entity that holds the liens on the Real Property

and the Personal Property Collateral.

13.    Events of Default are defined in the Schedule of Definitions and Covenants (the

"**Schedules**"), attached as Exhibit A to the MCA, which are part of the Loan Documents.

14.    As of the Petition Date, the McClain Debtors were in material default under the

terms of the Loan Documents, as a result of, among other things: (i) monetary events of default

by failing to make payments to Rabo as required under the Loan Documents, including, but not

limited to, the failure to make required payments in order forthe  aggregate,  unpaid  principal

balance  of  the  Operating  Line  of  Credit  3  Note  not  exceed $48,000,000.00 on or before

April 1, 2023 (Section 1.121(a), "*Non-Payment*"); (ii) providing financial information to Rabo

that was materially incorrect or misleading, and making false representations to Rabo (Section

1.121(b), "*False Representation*"); (iii)  failing to comply with various Borrower Covenants

contained in the Loan Documents (Section 1.121(c), "*Covenant Violation*"); (iv) failing to

maintain the Personal Property Collateral (or cause the Personal Property Collateral to be

maintained) in good condition and repair (Section 1.121(c), "*Collateral Maintenance*"); (v)

failing to comply with the terms and conditions of the Borrowing Base (Section 1.121(a), "*Non-

Payment*" & Section 1.121(c), "*Covenant Violation*"); (vi) death of (i) any Borrower or

Guarantor who is an individual (Section 1.121(e), *Death*"); and (vii) the failure to diligently collect all Collateral, including proceeds thereof, or disposal of Collateral or proceeds thereof in violation of the terms of the MSA (MSA, ¶ 5, *Grantor Covenants*) (Collectively, the "**Events of Default**").

15.        On April 6, 2023, Rabo sent a Notice of Default and Acceleration, and Demand for Payment letter (the "**Default Notice**") to the McClain Debtors, notifying them that, because they were in default under the Loan Documents, Rabo had accelerated and declared the entire amount of the Loan Obligations, as defined under the Loan Documents, immediately due and payable in full.

16.        On or about April 11, 2023, Rabo and the McClain Borrowers entered into that certain *Amended and Restated Forbearance Agreement* as amended by the *First Amendment to Amendedand Restated Forbearance Agreement* dated April 12, 2023, (collectively, the "**Forbearance Agreement**") wherein the McClain Defendants acknowledged the Events of Default, and Rabo agreed to forbear from exercising its rights and remedies under the Loan Documents. Also, Chelsea Marie McClain (McClain's wife at the time and now his widow) confirmed no ownership interest in any of the McClain Debtors, asserted no claims in any of Rabo'sCollateral, and subordinated any and all rights she had in and to any of Rabo's Collateral.

17.        As of May 11, 2023, the outstanding indebtedness due and owing to Rabo pursuant to the terms of the Loan Documents, exclusive of attorneys' fees/professional fees and

costs, default interest, and other charges as allowed under the Loan Documents (the "**Loan Obligations**") totals no less than the following amounts: (a) $52,254,714.83 on Obligation No. 22122952/22122953 (Operating Line of Credit 3), (b) $183,521.61 on Obligation No. 22114181 (Real Estate Term Loan 1), (c) $169,279.45 on Obligation No. 22117432 (Real Estate Term Loan 2), and (d) $909,472.44 on Obligation No. 22122951/0000030687 (Real Estate Term Loan 3).

18.     The Loan Documents are cross-defaulted and cross-collateralized such that all Collateral granted to Rabo under the Loan Documents secures the repayment of all Loan Obligations.

19.     Further, all of the McClain Debtors are jointly and severally liable, both as primary obligors and as guarantors, for the repayment of all Loan Obligations.

20.     The value of the Real Property and the Personal Property that are the subject of this Motion is unknown, but the value is certainly only a fraction of the amounts owed to Rabo under the Loan Documents.

21.     Indeed, Rabo is informed and believes that the value of all of the Real Property and the Personal Property that are the subject of this Motion is not more than $2,000,000 to $3,000,000.

22.     Further, while Rabo also has perfected liens on all of the McClain Debtors' personal property assets, including cattle and accounts receivable, it is clear given the massive fraud that the McClain Debtors committed that the value of any remaining Collateral after

liquidation of the Real Property and Personal Property that are the subject of this Motion will

not come close to satisfying all Loan Obligations.

23.     Based on appraisals that Rabo obtained on the Real Property several years ago,

Rabo is informed and believes that the value of the Real Property is not more than

$2,000,000.00 (the Real Property appraised for the combined amount of $1,715,000.00 in

2019).

24.     As it relates to the Personal Property, Rabo is informed and believes that the fair

market value of all the Personal Property is not less than $1,000,000.00.

25.     In short, there is no equity in the Real Property and Personal Property that are

the subject of this Motion.

26.     Upon information and belief, since the McClain Debtors have ceased operating

and have gone out of business, there is no insurance in place to protect Rabo against loss and

casualty to the Real Property or Personal Property.

27.     Rabo has not received any payments under the Loan Documents since prior to

the Petition Date.

## **ARGUMENT**

**A.  CAUSE EXISTS TO TERMINATE THE AUTOMATIC STAY
    CONCERNING THE REAL PROPERTY AND PERSONAL PROPERTY
    THAT ARE THE SUBJECT OF THIS MOTION.**

11 U.S.C. § 362(d)(1) provides that, upon request of a party-in-interest and after notice

and a hearing, the Court shall grant relief from the automatic stay "for cause, including the lack

of adequate protection."  "The Bankruptcy Code does not precisely define 'cause' under §

362(d)(1), and in the past we have noted that this lack of definition affords 'flexibility to the

bankruptcy courts.'"  *In re Mirant Corp.,* 440 F.3d 238, 253 (5th Cir. 2006) (quoting *Little

Creek Dev. Co. v. Commonwealth Mortgage Corp.* (*In re Little Creek Dev. Co.*), 779 F.2d

1068, 1072 (5th Cir.1986)).  Nonetheless, "courts consider numerous factors when determining

if a request for relief from stay is appropriate," *In re Choice ATM Enterprises, Inc.*, 2015 WL

1014617, at *3 (N.D. Tex. March 4, 2015), and case law makes clear that cause exists to

terminate the automatic stay where (a) the value of a creditor's collateral is declining or

threatening to decline in value as a result of the automatic stay, or (b) a creditor's collateral is

not properly insured and protected against loss.  *See, e.g., In re JCP Properties, Ltd.*, 540 B.R.

596, 613 (Bankr. S.D. Tex. 2015) (no payments on depreciating asset); *Sumitomo Trust &

Banking Co., Ltd, Los Angeles Agency v. Holly's, Inc.*, 140 B.R. 643, 696 (Bankr. W.D. Mich.

1992) (lack of insurance); *In re Barnes, Jr.*, 125 B.R. 484, 486 (Bankr. E.D. Mich. 1991)

(same).  Further, "[a] debtor's failure to make payments also constitutes 'cause' for granting a

motion for relief from stay."  *Marable v. Bank of New York Mellon*, 557 B.R. 521, 526 (Bankr.

E.D. Tex. 2016); *see also In re Jones*, 189 B.R. 13, 15 (Bankr. D. Okla. 1995) (failure to make

regular mortgage payments after bankruptcy filing constituted cause for relief from stay).

   Here, cause to terminate the automatic stay as it relates to the Real Property and the

Personal Property that are the subject of this Motion clearly exists.  While Rabo has no

evidence that the Real Property is depreciating, the Real Property is not insured or protected.

Further, the Personal Property—consisting of equipment and fixtures—consists of depreciating

assets that also are not insured.  Finally, no payments are being made under the Loan

Documents (not even adequate protection payments) and, given that the McClain Debtors are

defunct and their owner is deceased, no payments will be made under the Loan Documents.

Accordingly, the Court should terminate the automatic stay, for cause pursuant to Section

362(d)(1) of the Bankruptcy Code, and authorize Rabo to repossess and foreclose upon, sell, or

otherwise liquidate its interest in the Real Property and the Personal Property pursuant to non-

bankruptcy law, without further order of the Court.

### B.  THE COURT SHOULD TERMINATE THE AUTOMATIC STAY UNDER SECTION 362(d)(2) BECAUSE THERE IS NO EQUITY IN THE REAL PROPERTY AND PERSONAL PROPERTY THAT ARE THE SUBJECT OF THIS MOTION, AND THIS IS A CHAPTER 7 CASE WHERE REORGANIZATION IS NOT AT ISSUE.

Section 362(d)(2) of the Bankruptcy Code requires the bankruptcy court, on request of a

party in interest, to grant relief from the automatic stay when (a) the debtor has no equity in

the property that is the subject of the lift of stay motion, and (b) the property is not necessary

to the debtor's effective reorganization.  Pursuant to Section 362(g) of the Bankruptcy Code, the

moving party (here Rabo) has the burden of proof on the issue of equity, and any party opposing

relief has the burden of proof on all other issues.

The McClain Debtors' cases are Chapter 7 cases.  "Because chapter 7 strictly involves

liquidation, there can be no reorganization as a matter of law."  *In re Machado*, 2022 WL

257396, at *5 (Bankr. W.D. Tex. Jan. 27, 2022).  As such, the Real Property and Personal

Property that are the subject of this Motion are not necessary to the McClain Debtors' effective

reorganization.

Further, there is no equity in the Real Property and Personal Property that are the subject of this Motion. Those assets are fully encumbered—and then some—by Rabo's perfected liens. "Equity" as used in Section 362(d)(2)"portends the difference between the value of the subject property and the encumbrances against it." *Sutton v. Bank One, Tex., Nat'l Ass'n (In re Sutton)*, 904 F.2d 327, 329 (5th Cir. 1990) (citations omitted). "To establish a lack a equity, the Movants must show that the debt encumbering the Property exceeds the value of the Property." *Machado, supra.* Here, the amount the McClain Debtors owe to Rabo under the Loan Documents is staggering—*over $53 million.* Further, while Rabo does not know the precise value of the Real Property and the Personal Property, Rabo asserts based upon (a) prior appraisals it obtained on the Real Property and (b) its review of inventory lists and photos concerning the Personal Property, that the total value of all of the Real Property and Personal Property that are the subject of this Motion is not more than $3,000,000.00, and it is likely less than that.

In short, because the Real Property and Personal Property that are the subject of this Motion are not necessary for the McClain Debtors' reorganization in these Chapter 7 cases, and because there is no equity in the Real Property or Personal Property for the McClain Debtors or their bankruptcy estates, the Court should terminate the automatic stay, pursuant to Section 362(d)(2) of the Bankruptcy Code, and authorize Rabo to repossess and foreclose upon, sell, or otherwise liquidate its interest in the Real Property and the Personal Property pursuant to non-bankruptcy law, without further order of the Court.

### C.  THE COURT SHOULD WAIVE THE FOURTEEN (14) DAY STAY PERIOD.

Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that any order granting a

creditor relief from the automatic stay "is stayed until the expiration of 14 days after the entry of

the order, unless the court orders otherwise."  If the Court agrees with Rabo that the automatic

stay should be terminated with respect to the Real Property and Personal Property that are the

subject of this Motion, then Rabo requests that the Court also waive the fourteen (14) day stay

period and allow Rabo to immediately exercise its rights as a secured creditor.

The McClain Debtors are defunct, and their sole owner and manager has passed away.

The Personal Property is depreciating in value and, to Rabo's knowledge, neither the Real

Property nor the Personal Property are even insured at this time.  Further, the Trustee has already

authorized Rabo to secure the Personal Property in order to protect and preserve it from theft.

Rabo submits that the lack of insurance, and the McClain Debtors' lack of custody or control

over the Real Property or Personal Property and their inability to exercise such custody or

control, is sufficient cause to waive the 14-day stay period that otherwise might apply to this

Court's ruling.

### D.  PARTIES WHO MAY HAVE AN INTEREST IN THE PERSONAL PROPERTY AND WHO WILL RECEIVE NOTICE.

Rabo is not aware of any parties other than the McClain Debtors who have an interest in

the Real Property and whose interests, through a non-judicial foreclosure of the Trust Deeds,

could be eliminated or foreclosed.  But even if such other parties exist, those parties will receive

notice of the non-judicial foreclosure of the Trust Deeds once a foreclosure sale has been

scheduled, as required by applicable non-bankruptcy law.

With respect to the Personal Property, Rabo has searched the records of both the Texas

and Kentucky Secretaries of State and has determined that the following parties, in addition to

Rabo, may hold or claim an interest in the Personal Property:

Northland Capital Financial Services, LLC
P.O. Box 7278
Saint Cloud, MN 56302

Willis Kleinjan, RA
333 33rd Ave. So., #100
Saint Cloud, MN 56301

First Kentucky Bank
605 Main Street
Benton, KY 42025

Caterpillar Financial Services Corp
2120 West End Ave.
Nashville, TN 37203

First Capital Bank of Texas
3900 S. Soncy Road
Amarillo, TX 79119

Takeuchi Financial Services, a program of Bank of the West
1625 W. Fountainhead Pkwy AZ-FTN-10C-A
Tempe, AZ  85282

Rabo will provide notice of this Motion and of the deadline to object thereto to the

foregoing parties, as well as to all other relevant parties identified in Local Rule 4001-1(a).

WHEREFORE, Rabo respectfully requests that the Court grant this Motion, and enter an

Order terminating the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and/or (2), and that the

Court further waive the 14-day stay period established by Federal Rule of Bankruptcy Procedure

4001(a)(3), such that the Court's Order terminating the automatic stay would be immediately

effective on its entry.  Rabo also respectfully requests that the Court grant it such other and

further relief as the Court deems justified in these cases.  A proposed Order is submitted

herewith.

DATED this 19th day of May, 2023.

> UNDERWOOD LAW FIRM, P.C.
> Thomas C. Riney, SBN: 16935100
> W. Heath Hendricks, SBN: 240556451
> 500 South Taylor, Suite 1200, LB 233
> Amarillo, Texas 79101
> Telephone: (806) 376-5613
> Facsimile: (806) 379-0316
> Email: tom.riney@uwlaw.com
> Email: heath.hendricks@uwlaw.com
>
> --and--
>
> RAY QUINNEY & NEBEKER P.C.
> Michael R. Johnson *(Pro Hac Vice)*
> 36 South State, Suite 1400
> Salt Lake City, UT 84111
> Telephone:  (801) 532-1500
> Facsimile:  (801) 532-7543
> Email:  mjohnson@rqn.com
>
>
> */s/ Michael R. Johnson*
> Michael R. Johnson
> *Attorneys for Rabo AgriFinance LLC*

## NOTICE/RESPONSE DEADLINE

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS AT 205 SOUTHEAST 5TH AVENUE, ROOM 133, AMARILLO, TEXAS, 79101-1559, BEFORE THE CLOSE OF BUSINESS *FOURTEEN (14) DAYS* FROM THE SERVICE OF THIS MOTION. IF SERVICE IS BY MAIL, THREE ADDITIONAL DAYS ARE ALLOWED PURSUANT TO FED. R. BANKR. P. 9006(f). THUS, <u>THE OUTSIDE DATE FOR OBJECTING TO THIS MOTION IS FRIDAY, JUNE 9, 2023.</u>**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK OF THE BANKRUPTCY COURT, AND A COPY SERVED UPON COUNSEL FOR THE MOVING PARTY WITHIN THE TIME DESCRIBED ABOVE. IF NO RESPONSE IS TIMELY FILED, THE RELIEF REQUESTED SHALL BE DEEMED UNOPPOSED AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.**

**IF A RESPONSE TO THIS MOTION IS FILED, THE COURT WILL HOLD A FINAL HEARING AT A VIDEO DOCKET CALL, WHICH FINAL HEARING WILL BE HELD ON:**

**June 21, 2023, at the hour of 1:30 p.m.**

**THE RESPONSE MUST CONTAIN THE INFORMATION REQUIRED BY N.D. TEX. LOCAL BANKRUPTCY RULE 4001.1(b).**

## CERTIFICATE REGARDING CONFERENCE

Pursuant to LBR 2004-1, counsel states that he has conferred by email with both Kent Ries, the Chapter 7 Trustee, and Max Tarbox, counsel for the McClain Debtors, and neither of them oppose the relief requested in this Motion although, for the sake of clarity, neither the Trustee nor Mr. Tarbox are stipulating to any of the facts alleged in the Motion.

DATED this 19th day of May, 2023.

*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22nd, 2023, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.


*/s/ Michael R. Johnson*
Michael R. Johnson